DECISION *Page 3 
This matter first came on for hearing before Mr. Justice Lanphear on April 17, 2009 on Rockland Trust Community Development Corporation II's and Rockland Trust Company's motion for relief from subordination, for determination of priority, and for permission to foreclose its mortgages, pursuant to the Rhode Island Mechanics' Lien Law. The Court bifurcated these issues and in its May 1, 2009 decision, denied Rockland relief from subordination under Rule 60(b). The parties preserved their right to argue constitutional issues, which were heard by the Court on May 4, 2009 and are addressed herein. The Court's jurisdiction is pursuant to G.L. 1956 § 34-28-16. *Page 4 
 I Facts and Travel
This is a mechanics' lien case (consolidated with fourteen other such lien cases) involving and a large mill renovation project along the Pawtuxet River in West Warwick, Rhode Island. The project comprises two parcels, which are both involved in this overall litigation. The first of these properties is known as the Cotton Shed, which is a proposed retail use project located at 186 Providence Street, Lot 10 of Assessor's Plat No. 26. The second property is a 250-unit residential use project, known as Royal Mills at Riverpoint, located on Lot 11 of Assessor's Plat No. 26.
After an action was instituted by Northern Site Contractors, Inc. to enforce a mechanics' lien, the Superior Court Clerk issued citations to various persons or entities which may have interests in the property. Similar petitions against the two parcels were subsequently filed, and additional citations issued. Rockland Trust Community Development Corporation II and Rockland Trust Company (hereinafter "Rockland"), the first and third mortgage holders on the Cotton Shed property, failed to timely respond to particular citations issued to it.[1]
Rockland filed a motion seeking relief from subordination pursuant to G.L. 1956 § 34-28-16 of the Mechanics' Lien Law and Rule 60(b); a determination of its priority as the first two lien holders; and permission to foreclose under § 34-28-16.1.[2] On May 1, 2009, this Court issued a decision denying relief from subordination in the actions brought by Northern Site Contractors, Inc. ("Northern Site," K.M. 2008-1190), Sheridan Electric, Inc. ("Sheridan," K.M. 2008-1248), Roofing Concepts, Inc. ("Roofing Concepts," K.M. 2008-1445), and Rustic Fire *Page 5 
Prevention, Inc. ("Rustic," K.M. 2008-1396), to which Rockland did not timely answer. Rockland's constitutional claims were preserved and bifurcated for later hearing.
Manufacturers and Traders Trust Company ("MT"), a mortgagee on the Royal Mills property, similarly responded out of time to particular citations issued to it and moved for relief from subordination and for a determination of its priority as the first lien holder on the Royal Mills property. Although MT's motion is still pending, MT joined with Rockland to present constitutional arguments to the Court on May 4, 2009.[3] Specifically, Rockland and MT argue that the Superior Court's form Mechanics' Lien Citation violates procedural due process, and that the subordination clause in § 34-28-16 violates substantive due process and equal protection of the laws, as guaranteed by the United States Constitution and the Rhode Island Constitution.
 II Standard of Review
It is well-settled that "[i]n reviewing the constitutionality of statutes, `[t]he Legislature is presumed to have acted within its constitutional power.'" Gem Plumbing Heating Co., Inc. v.Rossi, 867 A.2d 796, 808 (R.I. 2005) (quoting Burrillville RacingAssociation v. State, 118 R.I. 154, 157, 372 A.2d 979, 982 (1977)). Furthermore, "[t]his [C]ourt will attach every reasonable intendment in favor of . . . constitutionality in order to preserve the statute."Id. (quoting Lynch v. King, 120 R.I. 868, 875, 391 A.2d 117, 121 (1978)) (internal quotations omitted). Importantly, the party challenging the statute bears the high burden of proving "beyond a reasonable doubt that the statute is unconstitutional." Id.
 III Analysis *Page 6 
Under the Rhode Island Mechanics' Lien Law, a notice of intention to claim a lien must first be recorded on the title records. See
Sec. 34-28-4 et seq. A suit may then be filed with the Superior Court pursuant to § 34-28-10, and notice must be provided to creditors and claimants. See Sec. 34-28-14. As provided in Section 34-28-15(a),
 [e]very citation issued under § 34-28-14 shall contain a copy of the complaint and shall be served on the parties by a sheriff or deputy sheriff or constable at least five (5) days before the return day of the citation, by leaving an attested copy at the last and usual place of abode of each of the persons to be cited or by reading the citation in their presence and hearing, if they reside in this state, otherwise by mailing the citation, by registered or certified mail, to the persons prepaid, addressed to their last known residence or place of business, and if no residence or place of business is known, no further service shall be necessary, other than service by advertisement provided for in § 34-28-14. Sec. 34-28-15(a).
Importantly, subsection (b) mandates that "[t]he citation noted in the aforesaid section shall be in a form established by the superior court." Sec. 34-28-15(b).
As clearly stated by the Legislature in the following section, § 34-28-16, the failure to promptly contest the claim results in the loss of a mortgage's priority status. See Sec. 34-28-16(a).[4] Petitioners may only avoid subordination of their interests only if they did not receive *Page 7 
actual notice of the filing of the mechanics' lien or were granted relief under Rule 60(b) to file out of time. See id.
Rockland and MT first take issue with the Superior Court's mechanics' lien citation form. In particular, Rockland and MT argue that the citation did not provide adequate notice and thus comport with procedural due process because it did not describe all consequences of not responding before the expressed deadline. Rockland and MT also take issue with § 34-28-16, arguing it takes property in an arbitrary, discriminatory, or irrelevant manner in violation of substantive due process; and that the Legislature's use of a Rule 60(b) standard versus a Rule 55(c) standard violates equal protection of the laws. This Court will deal with each argument in turn.
 1 Due Process
The Fourteenth Amendment to the United States Constitution prevents states[5] from depriving "any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV, § 1. Our State Constitution provides similar protections: "No person shall be deprived of life, liberty or property without due process of law." R.I. Const. art. I, § 2. Unlike other legal rules, due process "`is not a technical conception with a fixed content unrelated to time, place and circumstances.'" Gem Plumbing Heating Co., Inc., 867 A.2d at 803
(quoting Cafeteria Restaurant Workers Union, Local 473, AFL-CIO v.McElroy, 367 U.S. 886, 895, 81 S.Ct. 1743 (1961)). As our Supreme Court has explained, "[t]he very nature of due process negates any concept of inflexible procedures universally applicable to every imaginable situation." Id. *Page 8 
The Due Process Clause provides both procedural and substantive protections. To establish a claim of either type, "a deprivation of a protected property interest" must first be established.Perez-Acevedo v. Rivero-Cubano, 520 F.3d 26, 30 (1st Cir. 2008);see also Rhode Island Economic Development Corp. v. The Parking Co.,L.P., 892 A.2d 87, 98 (R.I. 2006). It is well-settled that a "mortgage's legal title to property pursuant to its mortgage is a property interest protected by the Federal and State Constitutions." In re D'Ellena,640 A.2d 530, 534 (R.I. 1994).
 A Procedural Due Process
Rockland and MT argue that the notice given in the mechanics' lien citation was inadequate and thus violative of procedural due process. "It is fundamental that the Fourteenth Amendment requires notice and an opportunity to be heard before one is deprived of his property or liberty." Vicario v. Vicario, 901 A.2d 603, 612 (R.I. 2006) (quotingFricke v. Fricke, 491 A.2d 990, 997 (R.I. 1985)) (internal quotations omitted). Thus, "[w]hen a procedural due process claim is advanced, the proper focus must be on the manner in which the state has acted: `how and when' the alleged deprivation was effected." Amsden v. Moran,904 F.2d 748, 753 (1st Cir. 1989).
"At a minimum, due process requires that notice be `reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections.'" Flynn v. Al-Amir, 811 A.2d 1146, 1151 (R.I. 2002) (quoting Mullane v. Central Hanover Bank Trust Co., 339 U.S. 306, 314,70 S.Ct. 652, 657 (1950)). The notice "need not necessarily be letter-perfect[,]" Paquette v. Zoning Board of Rev. of WestWarwick, 118 R.I. 109, 111, 372 A.2d 973, 974 (1977), so long as it is "reasonably calculated, under all the circumstances, to inform interested parties of the pendency of the action *Page 9 
and afford them an opportunity to present their objections." Jones v.Flowers, 547 U.S. 220, 126 S.Ct. 1708 (2006), quoting Mullane. Due process does not require notice of all possible consequences of the pending proceeding.
The analysis set forth in Mullane has been used to determine whether a particular method of notice provided due process, such as notice by publication, but has also been implemented by our Supreme Court to determine whether the substantive sufficiency of the notice given comported with due process standards. See East Greenwich Fire Districtv. Penn Central Company, 111 R.I. 303, 311, 302 A.2d 304, 315 (1973). InEast Greenwich Fire District, our Supreme Court found that notice published by the Public Utilities Commission with respect to an application to close streets and install devices met the due process test prescribed in Mullane. See id. at 311, 302 A.2d at 315. Although it set forth that there would be a hearing on the possible barricading of Queen and Long Streets and an installation of devices at London Street, it did not mention that the closing of London Street was a possibility.Id. at 310, 302 A.2d at 314. Notably, the petitioners argued that a person relying on this notice would conclude that London Street would remain open. Id. However, the High Court reasoned that "the notice was reasonably calculated to inform interested persons that [the applicant] was applying for some action and relief relating to the crossing in question." Id. (emphasis added). Significantly, the Supreme Court noted that "[t]he fact that the relief granted differed from the relief requested does not prove that the notice was inadequate." Id. at 311,302 A.2d at 316.
Although each case must be decided on its own facts, the citation form received[6] by Rockland and MT notified them that the petitioners were seeking "some action and relief relating" to the property in question, as did the notice in East Greenwich Fire District.See id. Furthermore, the citation was "`reasonably calculated, under all the circumstances, to apprise *Page 10 
interested parties of the pendency of the action and afford them an opportunity to present their objections.'" Flynn, 811 A.2d at 1151
(quoting Mullane, 339 U.S. at 314, 70 S.Ct. at 657). Specifically, the mechanics' lien citation informed interested parties that
 SHERIDAN ELECTRIC, INC.[7] has filed a petition in equity in said office representing that SBER ROYAL MILLS COTTON SHED, LLC AND COTTON SHED FEDERAL LLC are indebted to plaintiff in the sum of $191,216.05, besides interest according to amount filed with said petition, for materials furnished, and work and labor performed on behalf of defendants at the Cotton Shed in the construction, erection and reparation of a certain building, belonging to defendants situated in West Warwick upon AP 26 lot 10 of land owned by the said defendants in fee simple, bounded and described as follows . . . claiming a lien for said amount with interest and costs, and praying that said lien may be enforced against said land and building, and against the right, title and interest that said defendants as the owner thereof, had in and to the same at the time said petitioner's lien accrued thereon, and attached thereto, and that the same may be sold to satisfy said claim of the petitioner, and all other accounts and demands for which the same is pledged and liable by Chapter 34-28 of the General Laws, of 1956 and any amendments thereto.
 We command you to cite the said ROCKLAND TRUST COMMUNITY DEVELOPMENT CORP II to respond, if they shall see fit, before our Superior Court, at Warwick within the County of Kent, on or before 24th day of October 2008 and show cause, if any they have, why said lien should not be allowed and enforced by said Court for the amount claimed.
The citation form informed Rockland and MT of the specific action pending: the petitioner's mechanics' lien action. The citation also commands the party cited to respond before an express deadline to show cause why the lien should not be allowed and enforced by the Court for the amount claimed. It warns that the Court may enforce the lien if the interested party does not respond by the deadline. That it does not specifically articulate the precise and various ramifications of not responding by the express deadline (here, subordination to the mechanics' lien under § 34-28-16(a)) the notice is not rendered inadequate. Neither Rockland nor MT *Page 11 
pointed this Court to a contrary case that mandates that the ramifications for not responding be spelled out in detail in the notice.[8]
Rockland and MT also argue that the language "to respond, if they shall see fit" indicates that their response is discretionary. It is true that whether to respond was within Rockland's and MT's discretion: they could respond and protect their rights or they could choose not to respond and permit the lien to "be allowed and enforced . . . for the amount claimed." Additionally, Rockland and MT take issue with the language that the petitioner is "claiming a lien . . . against the right, title and interest that said defendants as the owner thereof, had[;]" and not the interest held by any other lien holders. Yet, the citation commands the party to "show cause . . . why said lien should not be allowed and enforced by the Court for the amount claimed." It does not make a distinction that the Court will enforce only the amount payable and covered by the defendant owner's interest.
As a whole, the citation was "reasonably calculated, under all the circumstances," to give notice that the mechanics' lien proceeding was pending, allowing Rockland and MT an opportunity to respond.Flynn, 811 A.2d at 1151 (quoting Mullane, 339 U.S. at 314,70 S.Ct. at 657). The notice "cannot reasonably be said to have misled [Rockland and MT] into inaction . . . or to have left [them] . . . in doubt concerning what was being [sought] and what property was affected."Carroll v. Zoning Board of Review, 104 R.I. 676, 248 A.2d 321 (1968) (holding that an inaccurate statement in published notice, "notwithstanding the irregularity, . . . reasonably conveyed the required information and adequately afforded those interested a reasonable time to make their appearance"). *Page 12 
Consequently, this Court finds that the notices given to Rockland and MT in the consolidated actions were constitutionally sufficient. Had Rockland and MT responded by the express deadlines given in the citations, they would have had an opportunity to show cause why their liens should have retained priority before their liens were subordinatedwithout making a Rule 60(b) showing.[9]
 B Substantive Due Process
Unlike a procedural due process claim, "a substantive due process inquiry focuses on `what' the government has done, as opposed to `how and when' the government did it." Amsden, 904 F.2d at 754. "To establish a violation of substantive due process, the plaintiffs must prove that the government's action was clearly arbitrary and unreasonable, having no substantial relation to the public health, safety, morals, or general welfare." Amsden, 904 F.2d at 754 (internal quotations and citations omitted).
In its substantive shape, due process "purports to protect individuals against state actions that . . . run counter to `ordered liberty' or that are `shocking or violative of universal standards of decency' or even `too close to the rack and the screw.'" Jolicoeur Furniture Co.,Inc. v. Baldelli, 653 A.2d 740, 751 (R.I. 1995) (quotingAmsden, 904 F.2d at 753-54); see e.g., L.A. Ray Realty v. Town Councilof Town of Cumberland, 698 A.2d 202, 211 (R.I. 1997) (court held that town officials "acted egregiously, as well as with animus, and without actual or legal basis," in altering an improperly adopted referendum and distributing the falsified ordinance to the Planning and Zoning Boards). Although the First Circuit has "left the door slightly ajar for federal relief in truly horrendous situations[,] . . . the threshold for establishing the requisite `abuse of government power' is a high one indeed." Nestor Colon Medina Sucesores, Inc. v. Custodio, *Page 13 964 F.2d 32, 45 (1st Cir. 1992). Moreover, "[t]he First Circuit [has] concluded that, however phrased, `the constitutional line has been crossed' only when some basic and fundamental principle has been transgressed." Jolicoeur Furniture Co., Inc., 653 A.2d at 751 (citingAmsden, 904 F.2d at 754).
Rockland and MT argue that § 34-28-16 violates substantive due process, relying on Roberts Construction, Inc. v. Harris Mill AssociatesInc., 609 A.2d 22 (R.I. 1992). In Roberts Construction, Inc., our Supreme Court was confronted with a similar scenario to the case at hand but dealing with the previous version of § 34-28-16 and not the amended version at issue in the present case.[10] Id. at 221. There, the trial justice granted a mortgagee's motion to answer out of time and for leave to foreclose on the property free of the mechanic lien. Id. The Supreme Court held that the trial justice did not err in allowing the petition to foreclose but that the mortgagee's interest should be subordinated to the mechanics' lien for filing untimely. Id. In discussing the prior version of the statute, the Court noted that
 the provision that renders a mortgage void and wholly lost in respect to all parties as opposed to subordinating it to the mechanics' lien holder raises serious due process issues since voiding such an interest in regard to parties other than the mechanics' lien holder would serve no useful purpose and would indeed be both arbitrary and capricious. Id.
Based on this language, Rockland and MT argue that the amended version of § 34-28-16 is also arbitrary and capricious because the amended version subordinates a mortgagee's interest to all other liens, and under certain circumstances, a mortgagee's interest could effectually be voided. It must be emphasized that our Supreme Court was not reviewing the amended version of the statute. The Court was noting, with respect to the prior version, that "the provision that *Page 14 renders a mortgage void and wholly lost in respect to all parties asopposed to subordinating it to the mechanics' lien holder raises serious due process issues." Id. (emphasis added).
"A regulation that takes property violates the substantive due process clause if it is arbitrary, discriminatory, or irrelevant to a legislative policy." L.A. Ray Realty, 698 A.2d at 211 (citingTenoco Oil Co. v. Department of Consumer Affairs, 876 F.2d 1013, 1021
(1st Cir. 1989)). Thus, a "regulation will stand if a rational relationship exists between it and a legitimate governmental objective."Tenoco Oil Co., Inc., 876 F.2d at 1021.
Our General Assembly expressly set forth the purpose of the Rhode Island Mechanics' Lien Law:
 to afford a liberal remedy to all who have contributed labor, material, or equipment towards adding to the value of property to which the lien attaches and should be construed accordingly. Sec. 34-28-32.2; see also Gem Plumbing Heating Co., Inc., 867 A.2d at 803.
As duly noted by our Supreme Court early on, "the law was `designed to prevent unjust enrichment of one person at the expense of another.'"Gem Plumbing Heating Co., Inc., 867 A.2d at 803 (quoting Art MetalConstruction Co. v. Knight, 56 R.I. 228, 246, 185 A. 136, 145 (1936)). Subordinating the interests of those who fail to enter an appearance in the action is rationally related to the overarching, legitimate purpose of affording a liberal remedy to those whose work has increased the value of the property.[11] See Tenoco Oil Co., Inc., 876 F.2d at 1021.
Attaching every reasonable intendment in favor of constitutionality, this Court finds that § 34-28-16 is not "`egregiously unacceptable, outrageous, or conscience-shocking'" and does not violate due process.Jolicoeur Furniture Co., Inc., 653 A.2d at 751 (quotingAmsden, *Page 15 904 F.2d at 754). Rockland and MT have not established beyond a reasonable doubt otherwise. See Gem Plumbing Heating Co., Inc., 867 A.2d at 808.
 2 Equal Protection
"Like the corresponding federal guarantee in the Fourteenth Amendment to the United States Constitution, the Equal Protection Clause of the Rhode Island Constitution provides, in relevant part, that no person shall be `denied equal protection of the laws.'" Mackie v. State,936 A.2d 588, 596 (R.I. 2007) (quoting R.I. Const. art. 1, sec. 2). However, "this protection does not demand that a statute necessarily apply equally to all persons. . . . [Or] require [that] things which are different in fact . . . to be treated in law as though they were the same.'" Id. (quoting Kleczek v. Rhode Island Interscholastic League,Inc., 612 A.2d 734, 737 (R.I. 1992) (quoting Rinaldi v. Yeager,384 U.S. 305, 309, 86 S.Ct. 1497, 1499 (1966)) (internal quotations omitted). Our Supreme "Court consistently has held that the Legislature enjoys a wide scope of discretion in enacting laws that affect some classes of citizens differently from others." Id. (quoting Cherenzia v. Lynch,847 A.2d 818, 823 (R.I. 2004) (quoting Boucher v. Sayeed, 459 A.2d 87, 91
(R.I. 1983))). Accordingly, "not all legislative classifications are impermissible." Id.
MT argues that the Legislature's use of the Rule 60(b) standard for relief to enter an appearance out of time provides less procedural protection to defaulting parties than the Rule 55(c) standard, which ordinarily applies up until the time that judgment is entered.[12]
Rule 60(b) is "tailored for setting aside final judgments." FederalDeposit Ins. Corp. v. Francisco Inv. Corp., 873 F.2d 474, 478 (1st Cir. 1989). In establishing a benchmark for measuring the finality of a judgment or order, our Supreme Court explained that *Page 16 
 [t]he finality contemplated by Rule 60(b) envisions an order that definitely terminates the litigation and leaves nothing more for the court to decide. If it appears from the order that something remains to be done before the rights of the litigants are fixed, the requisite finality to which the rule refers has not been reached. Murphy v. Bocchio, 114 R.I. 679, 683, 338 A.2d 519, 523 (1975).
Section 34-28-16, in pertinent part, mandates that the
 [t]he liens, under § 34-28-1, 34-28-2, 34-28-3 or 34-28-7, of all persons, . . . shall be subordinated to the claim of the plaintiff . . . unless the person shall, within twenty (20) days after the return day, or within such other time as may be allowed by the superior court pursuant to Rule 60(b) of the Superior Court Rules of Civil Procedure enter an appearance as a party in the cause commenced by the complaint described in §§ 34-28-10 and 34-28-13 and shall file an answer.
The subordination of a person's interest is automatic and thus the statute is self-executing. C.f. Thompson v. Thompson, 554 A.2d 1041,1042 (R.I. 1989) (holding that conditional order was not self-executing because it lacked the indicia of finality). Although the instant mechanics' lien litigation has not been terminated in its entirety, Rockland's and MT's interests were subordinated and their rights were fixed upon their failure to timely enter appearances and file answers in the actions against them. See Murphy, 114 R.I. at 683, 338 A.2d at 523. Accordingly, the Legislature's use of the Rule 60(b) standard was fitting, and Rockland and MT were not denied equal protection of the laws.
The Rhode Island General Assembly's use of the Rule 60(b) standard survives the minimal-scrutiny test.[13] Under this analysis, "`if [the Court] can conceive of any reasonable *Page 17 
basis to justify the classification, [it] will uphold the statute as constitutional.'" Mackie, 936 A.2d at 596 (quoting Cherenzia,847 A.2d at 825). Significantly,
 "[t]he Equal Protection Clause is violated `only if the [legislative] classification rests on grounds wholly irrelevant to the achievement of the State's objective. . . . A statutory discrimination will not be set aside if any state of facts reasonably may be conceived to justify it.'" Id. (citing Power v. City of Providence, 582 A.2d 895, 903 (R.I. 1990) (quoting McGowan v. Maryland, 366 U.S. 420, 425-26, 81 S.Ct. 1101, 1105 (1961))).
In making this determination, the Court will not "`delve into the Legislature's `motives' for passing legislation.'" Id. (quotingPower, 582 A.2d at 903). Nor must this Court "explore all the reasons that could be advanced to justify the act." Power, 582 A.2d at 903
(citing Dandridge v. Williams, 397 U.S. 471, 486, 90 S.Ct. 1153, 1162
(1970)). Rather, "[i]n accordance with these standards, a party attacking the rationality of [a] legislative classification [has] the burden to negative every conceivable basis which might support it."Id. (quoting Medeiros v. Vincent, 431 F.3d 25, 32 (1st Cir. 2005)) (quoting Abdullah v. Commissioner of Ins., 84 F.3d 18, 20 (1st Cir. 1996)). MT has failed to meet this burden.
As previously indicated, the Rhode Island Mechanics' Lien Law "is intended to afford a liberal remedy to all who have contributed labor, material, or equipment towards adding to the value of property to which the lien attaches and should be construed accordingly." Sec. 34-28-32.2;see also Gem Plumbing Heating Co., Inc., 867 A.2d at 803. Our General Assembly's implementation of a Rule 60(b) standard is not wholly irrelevant to this overarching, legitimate purpose. SeeMackie, 936 A.2d at 596. Rather, requiring a party to make a satisfactory showing of this higher standard furthers the purpose of affording claimants a liberal remedy and encourages strict compliance with the statutory scheme. Moreover, mechanics' liens actions often involve significant sums of money. Had the Legislature implemented a Rule 55(c) *Page 18 
standard, courts would be required to resolve any doubts of whether good cause existed in favor of removing default — or in this case, reinstating the person's original lien position — which would not promote strict compliance with the statute, nor advancing the purpose of this statute. See Reyes, 853 A.2d at 1247; see also Security PacificCredit (Hong Kong) Ltd. v. Lau King Jan, 517 A.2d 1035, 1036 (R.I. 1986). Accordingly, this Court "will uphold the statute as constitutional.'" See Mackie, 936 A.2d at 596.
 IV Conclusion
After carefully considering the applicable law and the parties' arguments, this Court finds that Rockland and MT have failed to prove "beyond a reasonable doubt that the [subordination] statute is unconstitutional." Gem Plumbing Heating Co., Inc., 867 A.2d at 803. The citations issued to Rockland and MT afforded them adequate notice as required by procedural due process. Moreover, Section 34-28-16 does not take property in an arbitrary manner but comports with principles of substantive due process. Finally, our General Assembly's use of a Rule 60(b) standard does not violate equal protection of the laws.
[1] The Rockland entities also held a second mortgage, which is not at issue because the loan was never advanced.
[2] The issue of whether Rockland will be permitted to foreclose under § 34-28-16.1 has been bifurcated and will be addressed separately.
[3] The Attorney General was provided notice of the hearing and constitutional issues involved but declined to participate.
[4] Section 34-28-16(a), in pertinent part, provides that
 [t]he liens, under § 34-28-1, 34-28-2, 34-28-3 or 34-28-7, of all persons, . . . and the title, claim, lease, mortgage, attachment, or other lien or encumbrance of all persons who have any title, claim, lease, mortgage, attachment, or other lien or encumbrance . . . to or in the property which is the subject matter of the complaint, except the persons who have recorded the lien or encumbrance before the filing of the complaint and who have not been served with or mailed a citation as provided in § 34-28-15 and who have no actual knowledge, on or before the return day, of the pendency of the complaint, shall be subordinated to the claim of the plaintiff, and persons claiming liens pursuant to this chapter, and any other person having any mortgage, attachment, or other lien or encumbrance who have entered an appearance as a party in the cause, unless the person shall, within twenty (20) days after the return day, or within such other time as may be allowed by the superior court pursuant to Rule 60(b) of the Superior Court Rules of Civil Procedure enter an appearance as a party in the cause commenced by the complaint described in §§ 34-28-10 and 34-28-13 and shall file an answer . . ." Sec. 34-28-16(a) (emphasis added).
[5] Our Supreme Court has held that "the operation of our Mechanics' Lien Law qualifies as state action." Gem Plumbing Heating Co.,Inc., 867 A.2d at 809.
[6] It is undisputed that Rockland and MT received actual notice and not only constructive notice by publication.
[7] Although the mechanics' lien citation quoted was to Rockland in relation to Sheridan's action, the citation form was the same used in all actions, as it was a Superior Court form. See Sec. 34-28-15(b).
[8] That a general civil summons indicates that default will occur if a party fails to answer a complaint in the time provided does not make the notice in this case inadequate. As already noted, due process "`is not a technical conception with a fixed content unrelated to time, place and circumstances.'" See Gem Plumbing Heating Co., Inc.,867 A.2d at 803.
[9] Our General Assembly's inclusion of a limited avenue of relief under Rule 60(b) acts only as an additional procedural safeguard.
[10] Prior to the amendment, the statute rendered an interest "void and wholly lost" rather than "subordinated." See 1991 R.I. Pub. Laws 1449.
[11] The wisdom of this provision is not at issue. "[T]he Due Process Clause does not empower the judiciary `to sit as a superlegislature to weigh the wisdom of legislation.'" Tenoco Oil Co., Inc.,876 F.2d at 1021 (quoting Exxon Corp. v. Governor of Maryland, 437 U.S. 117, 124,98 S.Ct. 2207, 2213 (1978)) (internal quotations omitted).
[12] The Rule 60(b) standard is higher than the "good cause" showing required under Rule 55(c). See Reyes v. Providence Place Group,L.L.C., 853 A.2d 1242, 1248 (R.I. 2004) ("Excusable neglect is a more rigorous standard than good cause, and it requires a party to show that the neglect was occasioned by some extenuating circumstances of sufficient significance to render it excusable.") (internal quotations and citations omitted).
[13] MT argues that the statute should be reviewed with strict-scrutiny, asserting "[t]he Rhode Island mechanics' lien statute `infringes upon fundamental rights' of mortgagees by depriving them of a hearing before judgment has been entered on less than fair notice, unless the mortgagee can meet the standard of Rule 60(b)." However, this Court has already found the notice given to be fair and to comport with the requirements of due process. Because the statute neither impinges a fundamental right nor creates a suspect classification, this Court will use a rational basis test to determine whether the classification is constitutional. See Mackie, 936 A.2d at 596. *Page 1